Please record co-counsel whose names appear in our briefs and I'll represent the victims of the Mother Emanuel AME Church Massacre. Ben Softness represents the amicus and he will address the 922 T6 issue very briefly. Day 1. First thing in the morning. Examiner Conley is tasked with doing a routine background check on Dylan Roof who wants to buy a semi-automatic Glock pistol. At 1.58 p.m. she faxes the Lexington County Sheriff's Office seeking and requesting an instant report. Simultaneously with that she sends a fax to the Solicitor's Office asking for an indictment or at least a copy of one, even though she had already looked at the judicial index which showed that there had never been an indictment handed down. Later that afternoon the Sheriff's Office faxes her back and says this, Columbia PD will have the report. Conley hits a button on her computer and looks at one of the several resources available. In this case the South Carolina contact list and she looks under Lexington County and does not see Columbia PD. But she does see West Columbia PD so she faxes the West Columbia Police Department a request for the instant report. Day 2. The next morning. West Columbia PD faxes Conley. Not a West Columbia PD warrant. This is not a West Columbia PD arrest. What does Conley do next? She enters the word open on her records which indicates according to which is prescribed by Federal Regulation 25-2 and SOP 5.0 means further research is required. So what does she do next? Nothing. She quits. In her deposition she acknowledges that the Sheriff's Office had told her Columbia PD has the instant report. She also acknowledges that she understood that West Columbia PD did not have it. Conley quit even though standard operating procedure 5.5.5 mandates that she contact the Columbia Police Department. Located in our state's capital. And as her immediate supervisor Debra Russell said that's a big police department and we contact it on a regular basis. Day 3. What does Examiner Conley do? Again, nothing. She's already quit. SOP 5.5.5 states this in part. The examiner will contact the point of contact. You will contact the courts. You will contact the arresting agencies in accordance with the preference indicated on the state processing page and the contact list. Every effort must be made to obtain the necessary information in order to make a final decision. Indeed, this SOP says in the next paragraph to emphasize this. The NICS has an obligation to make every reasonable effort to obtain the information. The state processing page in bold print says courts and arresting agencies are the primary contact. If you want to get the instant report, you get it from the Sheriff's Office or from the appropriate police department. Yet, before the district court, the government said to the court on day 2 when she quit, she had actually exhausted all of the means available, even though Conley has never said that she did that. Now, why did Conley quit? I don't know. I do know that she did quit, and the result of that roof was able to obtain his murder weapon by default. Now, Conley testified on four different occasions. In fact, the solicitor's office seeking the indictment. Here's the excuse she gave for her inaction. She said, I left it in delayed status, which is actually open status, but they mean about the same thing, because I did not receive any information regarding the instant report, and I did not hear back from the solicitor. Well, she did have information regarding the instant report. She was told Columbia PD has the instant report. Before the district court, the government maintained, well, she was just waiting on the solicitor to send her a copy of the indictment. That's why she didn't do anything further, and before this court in its brief, and I assume an oral argument, the government says, well, we weren't waiting on the indictment. We were waiting on the solicitor to send us the instant report. The judge got it wrong because he had a gross misunderstanding of the NICS policies. Here's what he wrote in his oral. It's not surprising that Connolly did nothing further because the NICS policy was not to follow up with an agency. Dead wrong. Couldn't be more mistaken. The policy, and the government concedes this, the policy is you don't follow up with an agency if a contact has been made, and the agency doesn't respond. And there's lots of study done by the NICS to show this is not an efficient way to follow up with an agency that hasn't responded. So you don't follow up if they have not responded. But that doesn't apply to follow up with an agency that has responded, like the Lexington County Sheriff's Office, or with an agency that you've not contacted, like the Columbia Police Department, or like the point of contact SLED, or like the clerk of court, as the SOP directs. What would contacting the clerk of court have found out in this case? Do you have any contact information about the Columbia PD? Anybody in the clerk of court's office from all across the state, do you know anything about the Columbia PD? Yes, in Columbia, South Carolina is the number. But she didn't do that, whether it had been fruitful or not. But she could have contacted SLED because SLED is located in Columbia. That is the point of contact, and that's who you contact. The SOP says for clarification. So where does it, I'm looking on page 491, which is the processing page, where it has contact information, courts and arresting agencies are the primary contact. She contacted the sheriff's office. And I'm not exactly sure what the government's response is, but as I understand it, she did go to the Lexington court website. So I'm assuming your argument is that that's not a contact. Well, it is a contact. She did go to it, and she could see as plainly that there's no indictment number, no indictment date, yet she asked the solicitor to send it. That's just, I don't know, it really doesn't play into this too much, other than that's the excuse she's given for not doing anything else. It's not contact information. It's just what the standard operating procedure says they're supposed to follow. It says courts and arresting agencies. And as I understand it, you've agreed that she contacted the court and that she did contact the sheriff's office. She got incorrect information. She didn't contact the court, Your Honor. She looked at this public index just to look, and it's just open to the public. But before you said it was a contact. I think it is a contact, but it's not a contact with the court. It's just a contact that she can use for information. It didn't have any information on it this time, but perhaps next time it might. But what she did do is she was told by the Lexington County Sheriff's Office, Columbia PD will have the insta-report. It's about as plain as you can get. And I might add the, I mean, first of all, that's who she should have contacted. Just the simple facts of Columbia. That's exactly what they did after the massacre. In fact, it was Deborah Russell, her immediate boss, who contacted Columbia PD. They said send us the facts, and they sent back a disqualified within maybe two minutes. Bruce wrote a request to purchase that pistol, which was drawn and denied. Not because of the murders, because he was not qualified to own one. So, Mr. Wilkins, as you say, Columbia PD, that's a pretty big police department. I guess your point is that she should have known what the Columbia. Well, she's supposed to be an expert on geography, county, city, and South Carolina. Okay, but if she didn't know, she was negligent for what? What's the point? If she didn't know, she was told. Columbia PD has the insta-report. Now, she could have, if she needed clarification, like I mentioned, she could have gone back to the sheriff's office. You have contact information for Columbia PD. She could have gone to the processing, I mean, according to the processing page, go to the point of contact, SLID. And they certainly would tell her who the contact is with the Columbia PD. But one other thing, she had to hit one button on her computer and pull up another valuable resource, the South Carolina City County List. And she admitted that had she done this, she would have contacted the arresting agency. That's the JA-699. Now, important, the JA-687 and 689, the government acknowledges that this South Carolina City County List is one of the documents provided to and utilized by the examiners. And page 679 through 680 kindly acknowledges that to make every effort or every reasonable effort that she is required to do means that it's mandatory that she review the relevant databases to which she has access. And that's almost a direct quote. Is that in the SOP or is that just something that examiners know to do? That is the method by which, that's the information, the databases supplied to her by the NICS to carry out the mandate of the SOP. Just like the processing page, the South Carolina Contact List, and the South Carolina City County List. All databases, all can be accessed by her with just a punch of one button. It would come up and she says, if I'd done that, I would have known who the arresting agency was, even though she'd already been told that by the Lexington County Sheriff's Office. I think the issue here is, the debate is, what was she required to do? So what's the significance when she looks at the South Carolina Contact List for Lexington County and there's no City of Columbia on there? I understand the government, maybe I'm wrong about this, the government says, well, she followed the procedure we had and when it didn't turn up anything, that's the end of it. Well, that's not the end of it either. Further research is required. She even said that when she opened her records. All she had to do was pull up the South Carolina City County List and look up Columbia. It says Richland County. Punch one more button to bring up the City Contact List. There's Columbia. There's Richland County. And the first listing for the first police department is Columbia Police Department with the contact number. So in a matter of just a matter of seconds, if she had done what she was mandated to do, what she was required to do, she would have contacted the Columbia PD, got the instant report back, and there's no question there was a disqualifier in that instant report. I might add, too, that Connelly stated her boss, Deborah Russell, who is the regional coordinator, testified, too, and the assistant director of the whole outfit, Stephen Marsh, testified, these SOPs are mandatory and must be followed. The court, this court in Baum and Wood, applying the case's decision from the Supreme Court of Berkovich and Galbert, all come to the same conclusion. When you're searching for the discretionary function exception or trying to identify one, it's a two-tiered approach. And the first tier is if the statute or the policy prescribes the employee's conduct, the conduct cannot be discretionary. And thus it is not protected by the discretionary function exception. The SOPs are obviously mandatory. They're replete with prescriptive terms like must, you will, you're required to, and almost totally devoid of any words like may or can. And the only time they're used is when, if you have a legal issue, you may contact a legal advisor and so forth. Now, in page 17 of the government's renewed motion to dismiss before the district court, here's what the government says. SOP 5.5.5 requires the NIC examiner to conduct external research consistent with a state processing page and contact list. Now, if she had done this, if she had followed her mandate, she would have been led to the Columbia Police Department, even if she had disregarded the facts that were sent to her from the Lexington County Sheriff's Office, and contact the Columbia Police Department for the report. And she's mandated by SOP 5.5.5 to do just that. Thank you, Your Honor. Thank you. Mr. Soffman. Thank you, Chief Judge Gregory, and may it please the court. The district court's interpretation of 18 U.S.C. section 922 T6 should also be reversed. The text of that provision makes unmistakably clear that it only provides immunity to some defendants in some cases, and it plainly does not apply to this defendant or this case. To begin with, section 922 T6 only applies to defendants who are, quote, responsible for providing information to the NICS database, and that's not what the government was doing here. We know that's not what the government was doing here because the Brady Act tells us who does that. It says that state and local law enforcement provide criminal records. Well, it's the NICS that maintains that database and executes the background check. The reference, then, in section 922 T6 to providing information has to be read in the context of the law and shows that it's a clear reference to the behavior by that set of stakeholders and not the other group. I'll note also that in determining whether what the government conducted at issue here constituted providing information or not, within the meaning of the statute, that's a legal question that this court determines de novo on review of a motion to dismiss. It's not reviewed for clear error, as the government mistakenly asserts in its brief. Second, the federal government wouldn't be immune here, even if it were providing information, because section 922 T6 immunizes only a local government or an employee of a federal, state, or local government. Here the defendant is the federal government itself. It's not an employee of the government, and of course it's not the local government. So again, the words of the statute just don't apply. And that's particularly significant because when Congress has sought to provide a blanket ban against suing the U.S. government, elsewhere in the U.S. Code, it's done so in pretty clear terms, and we provide a couple of examples of that in our brief. Finally, the structure of the Brady Act in general confirms what the clear text of the provision already makes clear, and that's that this is not a statute that provides blanket immunity. It's a statute that permits some lawsuits and bars certain other ones. For example, there's a permission for a lawsuit to correct the erroneous denial of a firearm. That's section 925A. The existence of Congress having carefully created targeted immunities, but also allowed certain other lawsuits, shows that this was not a sweeping immunity, and that to honor Congress's intent in writing those specific provisions, the statute has to be interpreted carefully and the terms of the statute have to be applied carefully, which respectfully is an analysis that the district court here didn't undertake. If the court has no questions on the 922 T6 issue, we respectfully request that the court reverse on that issue. Thank you. Thank you, counsel. Mr. Ward. Good morning. May it please the court, my name is Thomas Ward from the Department of Justice. I'm a deputy assistant attorney general overseeing the torts branch, which includes the FTCA section. Your Honor, before I start, I'd like the indulgence to express my greatest respect and sympathy for the victims of this tragedy and the survivors. I can't understand the depth of the pain that they have encountered and continue to encounter, and I just want to say that I personally in the United States acknowledge that pain. Turning to the argument, Your Honor, the suit is barred for multiple reasons, but most immediately by the discretionary function exemption to the FTCA. Could you move that mic up a little closer to you? Yes, sir. Is that better? Yes. Plaintiffs seek to impose liability on the United States based on policy decisions the FBI has made regarding how best to perform criminal background checks of individuals seeking to purchase firearms. As you know, the FTCA is a limited waiver of sovereign immunity, and it has several exceptions, probably the most important of which for my branch and my section is the discretionary function exception, without which the government could not function on a daily basis without being constantly sued. I'm going to kind of jump to the meat of it. Yes, please, Your Honor. Would you agree that, or what's the government's position, if there's a standard operating procedure, which there is here in the implementation by the FBI, the Brady Act, and other statutes, and the standard operating procedure requires that certain actions be taken by the examiner, but the examiner fails to take those actions, does that thwart the discretionary function exemption? Your Honor, I'd say in the Fourth Circuit it's clear that something that you're referring to, which are standard operating procedures, internal guidance under the Seaside, Holbrook, and Tiffany cases, cannot trump the mandate of discretion given in either a statute, in this case the Brady Act, or in the regulations below it. And so we have testimony in the case from the FBI's 30B6 witness, Ms. Del Greco, saying that the standard operating procedures are a guide designed to guide investigations. But, Your Honor, I would direct you to those three precedents, some of which are very recent, that say, in effect, that the price for circulating internal guidance cannot be an explosion in tort liability. If I may, Your Honor, just for a second, there are 317 NICS examiners. They have 22,000 inquiries a day, 8.2 million a year. The point of the standard operating procedures is to try to get people roughly on the same page, rather than just saying, you know, go do willy-nilly what you think is right. However, the FBI's position and the Fourth Circuit's position is very clear that that does not trump the broad discretion given to the Attorney General in the Brady Act to establish a national criminal background check system for those who wish to purchase firearms. In this case, where the 5.5.5 standard operating procedure says, the examiner will contact the state point of contact in accordance with the preference indicated on the state processing page. You look at the state processing page, and it says, contact information, courts and arresting agencies. Are you saying in that circumstance, if the examiner here simply had not contacted the Sheriff's Office or the West Columbia Police Department, just didn't do it, and so violated the standard operating procedure, there's still no liability? Under discretionary function, that would be covered. Meaning, Your Honor, no liability. The standard operating procedures do not create a mandatory requirement that trumps discretionary function in the Fourth Circuit. Full stop. There is no case to the contrary. Well, let's say just for purposes of argument, we disagreed on that. Just for purposes of argument. Assuming argument. So, we're back to 5.5.5. So, if the examiner is supposed to make some effort to follow the standard operating procedure, and then you look at the processing page, and it says, contact information, courts and arresting agencies. In that circumstance, what would have sufficed as a contact for the courts and arresting agencies, in your view? I realize your point is that you don't ever have to get there. But if we did, what would suffice as a contact? It would involve, Your Honor, the discretion of the examiner. And in this case, I don't want to get too divorced from the facts, because the examiner did contact the Lexington Sheriff's Office, which was listed as the arresting agency. And she also contacted the Eleventh Circuit Solicitor's Office. So, she did contact them. Now, what plaintiffs would like to say, and Judge Gergel, the District Court, rejected, is that they have to do all. Now, Judge Gergel came up with the good, I think, relevant example during oral argument, where he said, look, they've got probation officers on there. Of course they're not going to be contacting probation officers. This goes into the discretion given to the FBI and to the examiner on how to carry out an investigation. And that person, because of finite resources at the FBI in carrying out 8 million checks a year, has to have some discretion on how he or she carries them out. And in this instance, she contacted the arresting agency, and she contacted the Eleventh Circuit Solicitor's Office. Mr. Ward, she contacted the Lexington Sheriff's Department, which you agree was a point of contact, correct? Yes, Your Honor. And what was she told? She was told, Your Honor, and I'm paraphrasing, that it was, I think the last sentence was, Columbia PD has the arrest. All right. The purpose of contacting the POC is to get information, correct? Yes, Your Honor. All right. And the information is about as direct as it can be. It told her where it was, right? It told her... Where it was. Yes, Your Honor. All right. And she didn't contact it. Well, Your Honor, I agree with you as a factual matter, she did not. But may I respond? Because you answered my question, she didn't do it. Correct, Your Honor. See, in the cases you're citing with the Fourth Circuit, it can't arise in terms of liability in that sense if we're complaining about standard operating procedures are not adequate. Right. The broad range of FBI and the government to propose and implement a program for these searches, you can't do that. But here, the plaintiffs are not saying that the SOPs were wrong and inadequate. Instead, this is a case where it worked perfectly. It told you where you go, POC, and then you activate or you act on the information. The POC told you, oh, yeah, we know where it is. It's Columbia Police Department, and this is the capital of the state. It wasn't like they gave you someplace in South Carolina. I wonder where it is. You know, I don't know. South Carolina Police Department. And she didn't follow up. Now, that's a matter of perhaps negligence, but that doesn't make it discretion, because you don't do what you clearly told you should do. I disagree, Your Honor. I know you disagree, but isn't that true? May I, please? You can. Please answer the fact that she didn't do what the point of contact said. Is there any complaint about that the SOP was inadequate in this case? The SOP. Is there any? Well, answer my question. My question is, is there any complaint that the SOP was inadequate? That the plaintiffs are making that? Yes. I'm not sure I understand your question, Your Honor. I'm not trying to be difficult. No, you're not being difficult at all. I'm not being clear. Is there any complaint by the plaintiffs in this action that the SOP developed by the government was inadequate? Not that I'm aware of, Your Honor. All right. So those broad cases you're talking about, a lot of them are dealing with when there's a complaint that in using the discretion they came up with an SOP that was inadequate. So that being the case, didn't this SOP work perfectly in a sense it told you where to go and where you went gave you exactly, correctly the information, and you just didn't do it? No, Your Honor. You can answer it any way you want. Thank you, Your Honor. No, it didn't because what the response said in part was Columbia PD. Now what the examiner testified is that often the responding agencies don't give complete information. So what she did then is she did what was outlined in the SOP. She went to the contact list for Lexington County because that's where the arrest was. And on that contact list it said West Columbia. Columbia was not included. It should have been, but it wasn't. And so because her experience, she saw West Columbia, reached out to them, West Columbia came back and said this is not a West Columbia arrest. Now she didn't quit at that point. She still had an outstanding request to the 11th Circuit Solicitor Office. However, she did comply with what she needed to do as the District Court found and the FBI found under the standard operating procedures. And so if she was negligent, and I'm not saying she is, but let's assume arguendo, that still is a matter of discretion in how you carry out the investigation. She carried it out by going to the very next contact. The Lexington Sheriff did not provide the ORI, which is the data that identifies the police department. It didn't provide anything, so she needed to do something next to find out. What's ORI? ORI is, it slips my mind, Your Honor, but it is basically a social security number for law enforcement agencies. But it did say, as the Chief pointed out, Columbia Police Department. How much more information would she have needed? Well, Your Honor, they are not allowed to, they being the examiners, use the Internet except to go to law enforcement agency websites. And so her world, because of the 8 million checks they do, is limited to the databases. Well, but Columbia PD is a law enforcement agency. Yes, Your Honor, but the next thing that was required on her SOP was to look at the contact list. I thought you said that this wasn't a mechanical SOP that requires a certain number of steps. Which one is it? I'm saying that she is guided to the contact list next. She did what she was guided to next. Can I go back to that? Yes, Your Honor. But when you look at the processing page, which you referred to by 5.5, and it says contact information, Courts and Arresting Agencies, all right, she contacted the Sheriff's Office. But did she contact the courts? I'd ask opposing counsel whether the Internet search of the Lexington General Sessions Court was a contact. Apparently the FBI said that it was. But is that sufficient, particularly when you go to the contact list, there's General Sessions Court, and it tells you the fax machine doesn't work and you're to call somebody at the General Sessions Court, which she did not do. So when it says to contact the court, did the examiner do that? The General Sessions Court? I don't believe so, Your Honor.  And so what I would get at, Your Honor, for the SOP, is that it is not mandatory to contact them all. Hence, you wouldn't go down to the probation office on that. In the testimony in the cases, you contact the arresting agency to get an incident report. That's who she thought she was contacting. Right, but your view of the law, as I understand you to have stated it, is that an examiner who would have done neither in those cases, didn't contact the courts, didn't contact the arresting agency, there would still be no liability because you view the standard operating procedures as guidance but not a mandatory directive. Exactly. I and many of your brethren on the Fourth Circuit see it the same way. And so the price of circulating internal guidance should not be an explosion in tort liability. And if that's what comes down from the court, then that is going to impact law enforcement and most directly the NICS system immediately. We're going to have to change from shell to all NICS. What's the case from our circuit that makes that point most directly? It is Holbrook, Seaside, and Tiffany. All of them say it. Those are Wilkinson, Niemeyer, and I believe Judge Shedd. What was the first one? Holbrook, Seaside, and Tiffany. So let's say that somehow the standard operating procedure wasn't a standard operating procedure but it was part of a formally adopted regulation by the Justice Department. Would that change your answer in the discretionary context? Well, Your Honor, it would depend on the analysis of the standard operating procedure. But let's assume for sake of argument that... It's not a standard operating procedure anymore. It's a regulation that went through the Code of Federal Regulations and all that stuff. But let's assume that it's something mandatory like you must take off your shoes at your desk. That, I would say, would be mandatory. But in this case where we have SOPs such as every effort must be made, as we cite in our brief, that is far too broad, far too amorphous to be considered mandatory. It just simply cannot be something that you can point to for mandatory tort liability. That may be the case, but I understand your argument, but that's not this case. I would agree with you if Lexington had said, we don't have it, period. Okay, then your argument would be, well, they said they don't have it. We don't have to search the hither lands to find something that they don't have. That's not this case. They did exactly what they were supposed to do. They told you, we don't have it, but we tell you where it is. South Carolina Police, I mean Columbia, South Carolina Police Department. You're saying that they're not required to go there. If they go to some solicitor's office, are they here? But we're not talking about going all around places. It's direct point to point. And you're talking about, I guess you make the chicken little argument about what's going to happen to law enforcement. That's not this case. This case, it works exactly what it's supposed to do. How many people are killed in this country with gun violence? And more importantly, how many people are locked up with these long sentences for possession of guns? And you know you have three days to determine whether a weapon should be placed in someone's hands. And you're told where that record is, and you don't go there? And you're saying that's going to burden law enforcement to do that? No, I'm not saying that, Your Honor. I'm saying that there was an error when she went to her contact sheet and it did not list Columbia, and she made her best effort and best discretionary decision of where to call, and that's all that was required to do. She is not required, just because Columbia is a big city, to know everything about it compared to a little city. That would be getting into negligence. Negligence does not overcome discretionary function. And not doing the right thing doesn't turn it into discretion either. That veer to the other, to land her to West Columbia, that was because she didn't go straight to what was told where it is. You can't veer away from direct information and say, oh, I was lost in the weeds over here, and I had discretion. Not when you're told where it is. I disagree, Your Honor. She went to the contact list. That's what told her, and that was wrong. Counsel, what does the contact list have to do with it? You're saying that, for example, if they said, like she said, you know, we don't have that record, but, you know, I know that police officer. He or she is in the Columbia Police Department, and they made that arrest. You're saying you can just ignore that because, well, that's not the contact sheet. Let me go to my contact sheet. Forget about the fact that she knows who actually has it. That's absurd. Your Honor, I know that you're not intending to try to humiliate me by that tone. However, I'm not saying that. Counsel, let me tell you something. You don't have to figure out what my intent is at all. You just need to answer my questions, and my question is, and what I said was it is absurd in the hypothetical I gave you, and you answered that. So I don't need you to exonerate me or anything in that regard because my questions are directed to your answers. So answer that question. Yes, I said it's absurd to make the conclusion, if you are told, exactly who has the document, and then you go to a contact list. So answer that. You don't need to exonerate or put what my meaning is. That's not intent. Just answer my question. My answer to that, Your Honor, is if she had actual knowledge, we would be, and she said that was Columbia. I know Officer Joe is there. That's a different case than we have here. In this case, we have somebody who went to her next finding guide. To make sure I understand this, you say it's a different case. It's not really a different case because under your view of this case, it doesn't matter what she does or doesn't do because this is not intended to be a binding regulation or binding specific number of steps. She's immune, even if she did what the Chief Judge said, even under his hypothetical. Well, Judge Diaz, if it was negligence, yes. If there was intent, that would be something else. And so I'm talking about negligence. And so if she intentionally knew this and intentionally did not call it, we have something different. That's not this case. May I address Brady as well? My time has expired. No, you may ask him. I have one more question on that. Yes. If when she looked at the contact list and there was no city of Columbia, had she not contacted the West Columbia Police Department, would that change anything? No. Okay. Absolutely not. She would have then said there is no requirement to continue to follow up on research. It was considered to add to the regulation that delayed be actually answered within three days. And that amendment was rejected. As I read your responses to all the arguments, basically the bottom line is the government kind of has an all or nothing defense here. It really doesn't matter what transpires in a particular activity, whether it's this one or another search. There basically can be no liability for Federal Tort Claims Act purposes unless there is some intentional act by the examiner. Your Honor, I think you would look at the standard operating procedure level. I think that is correct. At the regulation level and at the Brady Act level, they require different analyses, which we briefed and I was prepared to address. But at the standard operating procedure level, that is absolutely correct. And it is in line with the Fourth Circuit's opinions, including very recent ones. And who characterizes the standard operating procedure as something less than obligatory or just discretionary? Is there evidence in the record by some government official that characterized it in that way? Yes, Your Honor. Where is that? It's Ms. Delbreco, who was the FBI's 30B6 witness, speaking on behalf of the FBI, saying that these are guides, not mandatory. And we've cited that in our briefs. Counsel, who do you believe is the beneficiary of the Brady Act? Who do you think Congress was trying to protect? All of us, 365 million Americans, Your Honor. And do you think that their interest was to protect law enforcement more than the people who might be the victims of gun violence? I think, Your Honor, under the Brady Act, it was to protect those who are involved with the NICS system as well as the 365 million of us. As Judge Gergel got it right, that this statute does not impose monetary damages on the United States. He could not find a case because it doesn't exist. So I don't say that law enforcement is more protective. The activating statute obviously wasn't the purpose of it, to determine whether or not there will be damages. It's a question of whether or not this act is somehow exempted from the Federal Tort Claim Act. And it is not. It only has to be, you agree, that unless it is the discretionary function exception, it is susceptible to tort action, correct? That's the only thing that protects it. Not under 922 T6, Your Honor. That is the alternative ground that Judge Gergel dismissed the complaint on. And then we still have South Carolina law, which Judge Gergel did not address. And so, certainly, if the Brady Act itself, at the statutory level, had something that was mandatory, that's something that would be considered, under the FTCA, as taking you out of discretion. Arguably, if there was something at the regulatory level, perhaps. But here, the regulatory level is so loose, using terms like contact all, and every effort, that that certainly, under the case law, cannot provide mandatory duties. You don't refer to it as regulatory in the sense that it's an active regulation. You're referring here to internal guidance documents. No, Your Honor. CFR is what I'm talking about. The CFR. So you go to statute, CFR, SOPs. SOPs are just internal guidance. That's what they focus their case on, for the most part. I mean, we already went through this once before. But if there's a regulation that directs specific activity, that's not exempt from the Federal Tort Claims Act. If it is specific and mandatory, Your Honor, it can and takes away discretion, that is correct. Are there other questions? Can I briefly address the Brady Act? Well, I thought that's what you were doing. I gave you a little time extra for that. Okay. But go ahead. I'll give you a couple of minutes to do that. Great. Thank you, Your Honor. So the Kellogg-Hanson brief talks about the Brady Act not being designed for this purpose. They, in part, start with the fact that it says local government, and then federal employees, and state employees. The reason why it says local government is because local governments don't have sovereign immunity of their own. And so it would have to list a local government, as opposed to the federal government or state government, which both have sovereign immunity on their own. Beyond that, the cases in this court, Norton and Medina, both make clear that the federal government is allowed to raise the defenses, including the immunities of federal employees. Now, Medina was decided in 2001. Now, it's dicta in a footnote. But the footnote is pretty clear that the United States is entitled to avail itself of any defenses of its entities it could raise in their individual capacities. And in that case, they talked about state immunities under Virginia. In the Norton case, which is 1978, they talked about federal immunities. And so what my learned colleagues are trying to do is create a false distinction between defenses and immunities. This case is, as Judge Gergel got it right, the type of case where the United States can only act through its individuals. It is entitled under Fourth Circuit law to raise all defenses and immunities, and it can do so here. And Medina was decided after the Westfall Act. So the notion that the Westfall Act has somehow changed the game is a red herring. The court made its decision, again, in dicta in a footnote. But it's clear that if discretionary function in Medina was not available, the court would have dismissed, I think, on the basis of immunity from that footnote. It said we are not required to reach this but. I don't want to belabor this. We've been at it a long time today. But it looks like to me our canons of construction would argue against the position that you take just from looking at the plain language, because you have two different grants of immunity in this statute, T6. The latter grant goes to employees of federal, state, and local governments and identifies each specific one. But when it concerns government only, it only applies to local government. And our canons of construction would normally say there's a reason for that. And the specificity of the latter immunity for employees would not carry over to the foregoing immunity only for governments. Yes, Your Honor, and that was my point. The reason they had to list local governments specifically is because they don't have sovereign immunity. State and federal do. But that's not what you read on the face of the statute. That's my point. We're required to go by the plain language of the statute. Right, Your Honor. I think that I may be misunderstanding your question, Your Honor. Are you saying that the local government then is made reference later and that's what takes it out? No. You have two different groups that are granted immunity. Governments, and the statute limits it to local government, and then the latter group are employees, and the employees are federal, state, and local governments. And the fact that the Congress left state and federal government out of the first one would seem to me not to give it statutory immunity under that particular statute. It may have other immunities, obviously, just general sovereign immunity. But the language of the statute doesn't, to me, seem to support your argument. Well, that's interesting, Your Honor. The reason I think you have to read that statute against the backdrop of state and federal sovereign immunity, so there wouldn't need to list local government, state government, federal government, and then their three employees, because it's known that state and federal both have their own immunities. They have sovereign immunity, whereas the local doesn't. That's why the local had to be included there specifically. And then in terms of the last point where they say that we do not provide information, we being the NICS examiners, to the NICS system, they certainly do. I mean, they provide denied, delayed, approved. So even under their argument, we would have had to provide information to the NICS system. So I think the district court got it right, and I think that this provision is designed to protect the federal government from money judgments in these types of cases. Thank you, Your Honors. Mr. Wilkins. It makes no sense that Congress would have used such a securitous route as suggested by the government if they intended to cover the federal government under the immunities provisions. Let me just say that as a Supreme Court in the Abrams-Scafsky case, I think that's the way it's pronounced perhaps, say the reason this law was passed is to keep guns out of the hands of people who shouldn't have guns and directed the Attorney General to do something about setting up a system. And the Attorney General did that. She tasked the FBI with coming up with very specific mandatory SOPs because if you do it like the government says, you don't have a system at all if you can just quit on day two or just not do what you're supposed to do. In fact, as she testified, Connelly testified, we are not allowed to do anything other than exactly what the SOP and the processing page and the contact page tells us to do. If we want to make a change or do something different, you know what they have to do? They have to send a memo up the line to management and management makes a policy decision and sends it back down if there's going to be a change. Now, Section 555 says you will contact the arresting agency. You will contact the arresting agency. It can't be much plainer than that and you do it according to the processing page and you go to the processing page and it says, contact information, courts and arresting agencies are the primary contact. Now, what Connelly did is neither. She didn't contact the courts even though she did pull up that public index just to see something about whether or not an indictment was listed, but that's not contacting the courts seeking information as I think this contemplates, but more importantly, she did not contact the arresting agency. Did she know who the arresting agency was? Yes, she did. She knew it was Columbia PD because she was told by the Lexington County Sheriff's Office. I think most important, one of my colleagues pulled out for me just now, references to JA 585. Here's what Connelly sent to the Lexington County Sheriff's Office. At the bottom of the page, she asks this. She states this. Should you, Connelly says, should you be unable to furnish this information, send me the instant report, please indicate below the person or agency which may be able to provide the information requested. Did the Lexington County Sheriff's Office respond to that? Yes, it did. In fact, back the same day, Columbia PD will have the report. Now, I know initially Connelly was under the misimpression that Lexington County was the arresting agency, and then somehow she kind of moved over to West Columbia PD. But that's because, and that was all cleared up the same day, when Lexington County said Columbia PD will have it. She just dropped it, didn't do anything with it. But the initial problem occurred because of lack of data integrity. Now, Steve Morris, the assistant director of the CJIS, which is over this background check outfit, the contact list is data. And making sure the contact list is up to date was required, he says, in order to maintain integrity of that data. It's only useful if it's accurate. Now, Deborah Russell, who is the regional coordinator since 2006 in charge of the mid-Atlantic region, including South Carolina, she testified, you know, I never did anything to check the integrity of the contact list. I never did anything. Even though she was responsible for doing the contact list for West Virginia and North Carolina, where she learned that some cities are in two different counties. Even she lives in Bluefield, West Virginia, which is also in Bluefield, Virginia, two different counties, even two different states. But here's something important. Here's what the director of the FBI said publicly. I think this was in his second press release. And I quote from what Director Comey said. Improbable events came together. But the one, that is the one event, we are definitely accountable for is not having reflected the geography of South Carolina on our contact sheet. He's talking about the South Carolina contact list. And he is publicly admitting that data integrity was not maintained. Now, it was immediately corrected. And I dare say it was corrected throughout the United States in every city that is located in two different counties. You know, the cases cited by the government, Holbrook, Seaside, some of those, is not this case. This is not a case dealing with a prison official searching a cell or not searching a cell, a federal agent ceasing or not ceasing an undercover operation, or FHA officials, not some broad language, maintain safety of the aircraft type. This is a case about failing to comply with the mandated steps as required by the SOPs. In addition, Connelly was a background example who never engaged in conduct that involved permissible exercise or policy judgment. As I said, she had no authority. So the discretionary function does not apply here at either tier. This case is like Berkovich because the Division of Biological Standards was required to test all vaccines, all lots, before releasing them. They didn't test a lot, and they released it, and the Supreme Court said they had no discretion to deviate from the mandated procedures. If Connelly's conduct is held to fall within the discretionary function exception, then the exception eats the rule, which the Supreme Court warned would defeat the purpose of the Brady Bill. This is a rare case, and I doubt that it will ever happen again. I don't know, but I doubt. But I do know one thing. This is the case. This is the case for which the Federal Tort Claims Act was specifically designed. Thank you, Your Honor. Thank you, counsel, both counsel. We're going to adjourn the court for the day, and then we'll come down and greet counsel. This honorable court stands adjourned until 2.30. God save the United States and this honorable court.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz